IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NOBILIS HEALTH CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-2386 |
| | § | |
| GREAT AMERICAN INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pending before the court[1] is Defendant Great American Insurance Company's ("Great American") Motion for Judgment on the Pleadings (Doc. 30) and Plaintiff Nobilis Health Corp.'s ("Nobilis") Motion for Partial Summary Judgment (Doc. 31). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Nobilis' motion and **DENIES** Great American's motion.

## I. Case Background

Nobilis filed this action against Great American alleging that Great American breached its insurance contract with Nobilis and that Great American breached its duty of good faith and fair dealing owed to Nobilis.[2]

---

[1]   The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. See Doc. 21, Ord. Dated Sept. 20, 2017.

[2]   See Doc. 24, Pl.'s 1st Amd. Compl. p. 1.

## A. <u>Factual Background</u>

Nobilis is a publicly-traded healthcare corporation located in Houston. Great American is an insurance company. The facts of the lawsuit are relatively undisputed.

### 1. **The Underlying Insurance Policy**

Nobilis purchased a Director & Officer ("D&O") insurance policy ("the Policy") from Great American with a policy period from October 30, 2014 to October 30, 2015.[3] Nobilis paid Great American $60,000 for the Policy.[4] Under the Policy, in consideration for the premium, Nobilis and Great American agreed that:

A.    The Insurer shall pay on behalf of the Insured Persons all Loss which the Insured Persons shall be legally obligated to pay as a result of a Claim (including an Employment Practices Claim or a Securities Claim) first made against the Insured Persons during the Policy Period or the Discovery Period for a Wrongful Act, except for any Loss which the Company actually pays as indemnification.

B.    The Insurer shall pay on behalf of the Company all Loss which the Insured Persons shall be legally obligated to pay as a result of a Claim (including an Employment Practices Claim or a Securities Claim) first made against the Insured Persons during the Policy Period or the Discovery Period for a Wrongful Act, but only to the extent the Company is required or permitted by law to indemnify the Insured Persons.

C.    The Insurer shall pay on behalf of the Insured Entity all Loss which the Insured Entity shall be legally obligated to pay as a result of a Securities Claim first made against the Insured Entity during the Policy Period

---

[3]    <u>See</u> Doc. 31-1, Ex. A to Pl.'s Mot. for Partial Summ. J., D&O Insurance Policy p. 2.

[4]    <u>See</u> <u>id.</u> p. 29.

or the Discovery Period for a Wrongful Act.[5] Under the Policy, "The Insurer" refers to Great American, and "the Insured Entity" and "the Company" refer to Nobilis.[6] The Policy defines "Insured Persons" as "Directors and Officers and all past, present and future employees of the Company other than Directors and Officers."[7]

The Policy defines "Claim" to include "a civil . . . proceeding or any appeal therefrom, made against any Insured seeking monetary or non-monetary relief and commenced by the service of an originating proceeding, complaint or similar proceeding . . . ."[8] The Policy defines "Insured" as "the Insured Entity and all Insured Persons."[9] The Policy defines "Loss" to include "settlements and judgments, pre-judgment and/or post-judgment interest, compensatory damages, punitive, aggravated or exemplary damages or the multiple portion of any multiplied damage award and Costs of Defence . . ." subject to certain exclusions.[10] "Costs of Defence" is defined to include "reasonable and necessary legal fees, costs and expenses incurred in the investigation,

---

[5]   Id. p. 33.

[6]   See id. pp. 2, 34-36.

[7]   Id. p. 36.

[8]   Id. p. 34.

[9]   Id. p. 36.

[10]   Id.

defense or appeal of any Claim . . . ."[11]

Under the policy, Great American was required to "advance Costs of Defence prior to the final disposition of any covered Claim" within sixty days of "receipt of written evidence that Costs of Defence ha[d] been incurred."[12] The advancement of "Costs of Defence" was conditioned on the payment of a retainer and any costs advanced were to reduce Great American's liability under the Policy.[13]

The Policy defines "Wrongful Act" as:

(1) any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty . . . by any Insured Persons in their capacity with the Company;

(2) any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the Insured Entity . . . ;

(3) any matter claimed against any Insured Persons solely by reason of their status with the Company; or

(4) any matter claimed against any Insured Persons arising out of their service as a director, officer, trustee, regent, governor, member of the Board of Managers, or equivalent position of an Outside Entity, but only if such service is at the request of the Company.[14]

"Related Wrongful Acts" are broadly defined as "Wrongful Acts which

---

[11]     Id. p. 35.

[12]     See id. p. 14.

[13]     See id.

[14]     Id. p. 38.

4

are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision."[15]  Section VI of the Policy states that:

> More than one Claim involving the same Wrongful Act or Related Wrongful Acts of one or more Insureds shall be considered a single Claim.  All such Claims constituting a single Claim shall be deemed to have been made on the earlier of the following dates:  (1) the earliest date on which any such Claim was first made; or (2) the earliest date on which any such Wrongful Act or Related Wrongful Act was reported under this Policy or any other policy providing similar coverage.[16]

Whether Section VI of the Policy applies such that Nobilis' claims for coverage for multiple lawsuits filed against Nobilis are considered a single Claim filed within the policy period is the pertinent issue in this lawsuit.

### 2.  The Seeking Alpha Post

On October 9, 2015, an article written by an anonymous user, going by the username "The Emperor Has No Clothes," was posted on the website <u>Seeking Alpha</u>.[17]  The posting was about Nobilis' stock value and was titled "Nobilis: About To Fall From Nobility, Part I, 65%+ Downside."[18]  As the title suggests, the article was about how Nobilis was an overvalued company and suggested that Nobilis' stock

---

[15]  <u>Id.</u> p. 37.

[16]  <u>Id.</u> p. 41.

[17]  <u>See</u> Doc. 31-2, Ex. B to Pl.'s Mot. for Partial Summ. J., Seeking Alpha Post p. 1.

[18]  <u>Id.</u>

price was bound to drastically drop.[19]  The author summarized his or her major findings as: (1) Nobilis is a "[s]urgical center roll up with a management team having experience with prior roll ups losing 90%+ of shareholder value;" (2) Nobilis' [i]nsiders have cashed out more than $70 million in the year-to-date period through a combination of share sales and compensation (~14% of current market cap);" (3) Nobilis has multiple accounting red flags including four "CFO changes in a handful of years, . . . [and] recent auditor resignations," revenues that are potentially overstated, and "newly acquired acquisitions with Accounts Receivables issues;" (4) Nobilis has "[q]uestionable marketing, with paid studies touting inappropriate success rates for its medical procedures;" (5) Nobilis "is significantly overvalued, and appears to be guiding for unachievable targets" and has "65%+ downside in [its] current stock price."[20]

As a result of the Seeking Alpha article, the stock price of Nobilis purportedly fell over twenty-seven percent.[21]

### 3.    The **Hall** Lawsuit[22]

As a result of the drastic fall in stock price, on October 21,

---

[19]    Id.

[20]    See id. p. 1.

[21]    See Doc. 31-5, Ex. E to Pl.'s Mot. for Partial Summ. J., Hall Complaint p. 12.

[22]    Hall v. Nobilis Health Corp. et al., No. 4:15-cv-03098, Doc. 1 (S.D. Tex. Oct 21, 2015).

2015, a class-action lawsuit (the "Hall Lawsuit") was filed against Nobilis in the United States District Court for the Southern District of Texas.[23]   The Hall lawsuit was also filed against Christopher Lloyd ("Lloyd") and Kenneth Klein ("Klein").[24]   Per the Hall complaint, at all times relevant to the lawsuit, Lloyd was the Chief Executive Officer ("CEO") of Nobilis, and Klein was the Chief Financial Officer ("CFO") and Chief Accounting Officer ("CAO") of Nobilis.[25]   The Hall plaintiffs were a class of people who had purchased or acquired Nobilis' stock between April 2, 2015, and October 8, 2015.[26]   The Hall plaintiffs alleged that Nobilis, as well as Lloyd and Klein, "made false and/or misleading statements and/or failed to disclose that": (1) Nobilis' claimed success rate for its "AccuraScope" procedure was inaccurate and the procedure "lacked recognition from any university, medical body, or insurance company;" (2) Nobilis "overstated its 2014 revenues by as much as $36 million;" (3) Nobilis "misrepresented its 2014 revenue growth rate as 161%, when it was actually only 44%."[27]   The Hall complaint discussed the Seeking Alpha post and the effect it had on Nobilis'

---

[23]   See id.

[24]   See id.

[25]   See id. pp. 4-5.

[26]   See id. p. 2.

[27]   Id. p. 3.

stock price.[28]

On or before October 23, 2015, Nobilis gave Great American notice of the <u>Hall</u> Lawsuit and requested coverage pursuant to the Policy.[29]  The <u>Hall</u> plaintiffs voluntarily dismissed the <u>Hall</u> Lawsuit on December 8, 2015.[30]

### 4. Nobilis' Corrective Disclosure

On January 5, 2016, Nobilis filed a Form 8-K with the SEC in which it disclosed certain issues with its past financial statements.[31]  The Form 8-K stated that the previously issued financial statements covering Nobilis' 2014 fiscal year and parts of 2015 "require[d] restatement and should no longer be relied upon."[32]  The Form 8-K then identified some of the key inaccuracies in the previously filed financial statements and then stated that Nobilis would "amend the [financial statements] and file them with the Securities and Exchange Commission as soon as possible."[33]  As a result of this disclosure, Nobilis' stock price purportedly fell

---

[28]    See <u>id.</u> p. 3.

[29]    See Doc. 31-6, Ex. F to Pl.'s Mot. for Partial Summ. J., Email Notice of <u>Hall</u> Complaint.

[30]    See Doc. 31-9, Ex. I to Pl.'s Mot. for Partial Summ. J., <u>Hall</u> Not. of Voluntary Dismissal.

[31]    See Doc. 34-2, Ex. 1 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Form 8-K SEC Disclosure.

[32]    See <u>id.</u> p. 2.

[33]    See <u>id.</u> pp. 2-4.

approximately twenty percent within a day.[34]  On January 13, 2016, Nobilis filed amended financial statements with the SEC.[35]

### 5.  The <u>Schott</u> Lawsuit[36]

On January 19, 2016, another class-action lawsuit (the "<u>Schott</u> Lawsuit") was filed against Nobilis.[37]  An amended complaint was filed in the <u>Schott</u> Lawsuit on March 7, 2016.[38]  The amended <u>Schott</u> complaint named Lloyd, Klein, and Andy Chen ("Chen") as defendants.[39]  According to the amended <u>Schott</u> complaint: (1) Lloyd was the CEO of Nobilis until resigning on January 7, 2016; (2) Klein was Nobilis' CFO since July 2015; and (3) Chen was Nobilis' CFO from July 2014 to July 2015.[40]

The <u>Schott</u> plaintiffs consisted of people who had purchased Nobilis' stock between April 2, 2015, and January 6, 2016.[41]  In

---

[34]    <u>See</u> Doc. 31-11, Ex. K to Pl.'s Mot. for Partial Summ. J., <u>Schott</u> Complaint p. 8; Doc. 31-13, Ex. M to Pl.'s Mot. for Partial Summ. J., <u>Cappelli</u> Complaint p. 11.

[35]    <u>See</u> Doc. 34-3, Ex. 2 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Form 10-K/A SEC Disclosure; Doc. 34-4, Ex. 3 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Form 10-Q/A Amendment No. One; Doc. 34-5, Ex. 4 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Form 10-Q/A Amendment No. Two.

[36]    Schott v. Nobilis Health Corp. et al., No. 4:16-cv-00141, Doc. 1 (S.D. Tex. Jan. 19, 2016).

[37]    <u>See</u> Doc. 30-5, Ex. 3 to Def.'s Mot. for J. On the Pleadings, <u>Schott</u> Complaint.

[38]    <u>See</u> Doc. 31-11, Ex. K to Pl.'s Mot. for Partial Summ. J., Amended <u>Schott</u> Complaint.

[39]    <u>See id.</u>

[40]    <u>See id.</u> pp. 10-11.

[41]    <u>See id.</u> p. 2.

9

summation, the amended <u>Schott</u> complaint alleged that throughout the class period, the <u>Schott</u> defendants "made false and/or misleading statements and/or failed to disclose that:" (1) Nobilis "overstated the value of accounts receivable acquired in the Athas Acquisition by $1.7 million, or 36%;" (2) Nobilis "overstated its net income for the year ended December 31, 2014 by more than $4 million, or 25% and overstated its net income for the quarter ended March 31, 2015 by more than $3.27 million, or 163,400%;" and (3) Nobilis "lacked effective internal financial controls."[42] The amended <u>Schott</u> complaint discussed the <u>Seeking Alpha</u> post and Nobilis' amended SEC disclosures, and their effect on Nobilis' stock price.[43] The amended <u>Schott</u> complaint also detailed the inaccuracies in Nobilis' SEC disclosures that were repaired by Nobilis' amended SEC disclosures.[44]

On September 29, 2016, the <u>Schott</u> court dismissed the <u>Schott</u> Lawsuit with leave to amend, and, the following month, the <u>Schott</u> plaintiffs voluntarily dismissed the <u>Schott</u> Lawsuit with prejudice.[45]

---

[42]    <u>See</u> <u>id.</u> p. 6.

[43]    <u>See</u> <u>id.</u> pp. 6-8.

[44]    <u>See</u> <u>id.</u> pp. 7-9.

[45]    <u>See</u> Doc. 31-12, Ex. L to Pl.'s Mot. for Partial Summ. J., Dismissal of <u>Schott</u> Lawsuit; Doc. 31, Pl.'s Mot. for Partial Summ. J. p. 11.

10

### 6.    The __Cappelli__ Lawsuit[46]

On January 8, 2016, another class-action (the "__Cappelli__ Lawsuit") was filed against Nobilis in the Ontario Superior Court of Justice.[47]  On July 20, 2016, an amended complaint was filed in the __Cappelli__ Lawsuit.[48]  The amended __Cappelli__ complaint named Lloyd, Klein, Chen, Harry Fleming ("Fleming"), and Calvetti Ferguson, P.C., ("Calvetti Ferguson") as defendants.[49]  According to the amended __Cappelli__ complaint: (1) Lloyd was Nobilis' CEO until his January 6, 2016 resignation; (2) Klein was Nobilis' CAO until July 9, 2015, and was thereafter Nobilis' CFO; (3) Chen was Nobilis' CFO until July 9, 2015, and thereafter Nobilis' Executive Vice President of Finance; (4) Fleming was Nobilis' chairman of the board, president, and secretary; and (5) Calvetti Ferguson was Nobilis' independent auditing firm up to August 14, 2015.  The __Cappelli__ plaintiffs consisted of those persons who acquired Nobilis' stock from March 23, 2015, to January 5, 2016, and held those shares at the close of trading on October 8, 2015, the date of the __Seeking Alpha__ post, or January 5, 2016, the date Nobilis

---

[46]    __Cappelli v. Nobilis Health Corp. et al.__, No. CV-16-544173 (Ontario Sup. Ct. Justice).

[47]    __See__ Doc. 30-7, Ex. 5 to Def.'s Mot. for J. On the Pleadings, __Cappelli__ Complaint.

[48]    __See__ Doc. 31-13, Ex. M to Pl.'s Mot. for Partial Summ. J., Amended __Cappelli__ Complaint p. 11.

[49]    __See id.__

disclosed the inaccuracies in its past SEC disclosures.[50]

The *Cappelli* plaintiffs alleged that during the *Cappelli* class period the price of Nobilis' stock was artificially inflated by the acts and omissions of the *Cappelli* defendants. Specifically, the *Cappelli* plaintiffs alleged that throughout the *Cappelli* class period Nobilis' financial statements were incorrectly overstating goodwill and "provided the investing public with a misleading view of Nobilis' revenues, expenses, and general business operations."[51] Like the *Hall* and *Schott* complaints, the *Cappelli* complaint discussed the *Seeking Alpha* post and the corrective SEC disclosures and the effect they had on Nobilis' stock price.[52] It is the court's understanding that the *Cappelli* Lawsuit is currently ongoing.[53]

### 7. Coverage Under the Policy

Great American agreed to provide coverage to Nobilis for the *Hall* lawsuit pursuant to the Policy.[54] However, Great American denied coverage for the *Schott* and *Cappelli* lawsuits on the basis that the requests for coverage were made outside of the Policy's

---

[50] *See* *id.* p. 4.

[51] *See* *id.* p. 9.

[52] *See* *id.* pp. 9-11.

[53] *See* Doc. 32, Pl.'s Resp. to Def.'s Mot. for J. on the Pleadings p. 8.

[54] *See* Doc. 31-1, Ex. A to Pl.'s Mot. for Partial Summ. J., D&O Insurance Policy p. 7; Doc. 24, Pl.'s 1st Amd. Compl. p. 3.

coverage period and were not deemed to be a single claim with the <u>Hall</u> claim under Section VI of the Policy.[55]

## B. <u>Procedural Background</u>

On May 26, 2017, Nobilis filed its Original Petition against Great American in the 189th Judicial District of Harris County, Texas.[56]  On August 4, 2017, Great American removed the case to this court based on diversity jurisdiction.[57]   On November 17, 2017, Nobilis filed its First Amended Complaint.[58]  Great American filed an answer to Nobilis' First Amended Complaint on December 14, 2017.[59]

On March 5, 2018, Great American filed its pending motion for judgment on the pleadings.[60]  On March 13, 2018, Nobilis filed its pending motion for partial for summary judgment.[61]  Nobilis filed a response to Great American's motion for judgment on the pleadings on March 26, 2018.[62]  On April 2, 2018, Great American filed a reply

---

[55]    <u>See</u> <u>id.</u> p. 12.

[56]    <u>See</u> Doc. 1, Def.'s Not. of Removal.

[57]    <u>See</u> <u>id.</u>

[58]    <u>See</u> Doc. 24, Pl.'s 1st Amd. Compl.

[59]    <u>See</u> Doc. 25, Def.'s Amd. Ans. to Pl.'s 1st Amd. Compl.

[60]    <u>See</u> Doc. 30, Def.'s Mot. for J. on the Pleadings.

[61]    <u>See</u> Doc. 31, Pl.'s Mot. for Partial Summ. J.

[62]    <u>See</u> Doc. 32, Pl.'s Resp. to Def.'s Mot. for J. on the Pleadings.

in support of its motion for judgment on the pleadings.[63]  On April

3, 2018, Great American filed a response to Nobilis' motion for

partial summary judgment.[64]  On April 9, 2018, Nobilis filed a reply

in support of its motion for partial summary judgment.[65]

## II.  Legal Standard[66]

Summary judgment is warranted when the evidence reveals that

no genuine dispute exists on any material fact and the moving party

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v.

Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a

fact that is identified by applicable substantive law as critical

to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal

Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine,

the dispute regarding a material fact must be supported by evidence

such that a reasonable jury could resolve the issue in favor of

either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d

396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

---

[63]    See Doc. 33, Def.'s Reply in Support of Def.'s Mot. for J. on the Pleadings.

[64]    See Doc. 34, Def.'s Resp. to Pl.'s Mot. for Partial Summ. J.

[65]    See Doc. 35, Pl.'s Reply in Support of Pl.'s Mot. for Partial Summ. J.

[66]    The court intentionally does not include the standard for judgment on the pleadings because, as discussed below, it is not necessary for the court to do an analysis of Great American's motion for judgment on the pleadings.

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). The movant may meet this burden by demonstrating an absence of evidence in support of one or more elements of the case for which the nonmovant bears the burden of proof. See Celotex Corp., 477 U.S. at 322; Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1074 (5th Cir. 1997). If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in his pleading but must respond with evidence showing a genuine factual dispute. Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).

### III. Analysis

Nobilis' claims currently consist of a breach of contract claim, a breach of the duty of good faith and fair dealing claim, and a request for a declaratory judgment.[67] Nobilis moves for summary judgment on its breach of contract claim and requests that in the alternative, the court issue a declaratory judgment declaring that Nobilis is entitled to its "Costs of Defence" in defending the Schott and Cappelli Lawsuits.[68] Great American moves

---

[67]  See Doc. 24, Pl.'s 1st Am. Compl. pp. 7-10.

[68]  See Doc. 31, Pl.'s Mot. for Partial Summ. J. p. 24.

for judgment on the pleadings with respect to all of Nobilis'
claims.[69]   As the parties' motions mirror each other, the court
considers them simultaneously.

Great American argues that there is no coverage for the <u>Schott</u>
and <u>Cappelli</u> Lawsuits because the wrongful acts alleged in the
<u>Schott</u> and <u>Cappelli</u> lawsuits are not related to the wrongful acts
alleged in the <u>Hall</u> lawsuit, and therefore, coverage is not
available because Great American was notified of the insurance
claims regarding the <u>Schott</u> and <u>Cappelli</u> Lawsuits outside of the
Policy's period.[70]   Accordingly, Great American argues that the
breach of contract claim fails as a matter of law and must be
dismissed.   Great American also argues that because there is no
coverage there can be no breach of the duty of good faith and fair
dealing and no declaratory judgment.   Thus, Great American argues
that these claims fail as a matter of law and must also be
dismissed.[71]

The pressing question before the court is whether, under the
Policy, the wrongful acts alleged in the <u>Schott</u> and <u>Cappelli</u>
Lawsuits are related to or the same as the wrongful acts alleged in
the <u>Hall</u> Lawsuit.

**A.    <u>Principles of Insurance Law</u>**

---

[69]     <u>See</u> Doc. 30, Def.'s Mot. for J. on the Pleadings.

[70]     <u>See</u> Doc. 30-1, Def.'s Mot. for J. on the Pleadings pp. 16-24.

[71]     <u>See</u> <u>id.</u> p. 24.

16

As this action is in federal court under diversity jurisdiction, state law governs the substantive matters. See <u>Erie R. R. v. Tompkins</u>, 304 U.S. 64, 78 (1938). The parties have both cited to Texas law as controlling authority and explicitly agree that Texas law applies to this lawsuit.[72]

### 1.   Contract Interpretation

Insurance policies are subject to the rules of contract interpretation. <u>Progressive County Mut. Ins. Co. v. Sink</u>, 107 S.W.3d 547, 551 (Tex. 2003). "Terms in contracts are given their plain, ordinary, and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning." <u>Bituminous Cas. Corp. v. Maxey</u>, 110 S.W.3d 203, 208-09 (Tex. App.-Houston [1st Dist.] 2003, pet. denied).

### 2.   Eight-Corners Rule

An insurer's duty to defend requires it to "defend its insured if a plaintiff's factual allegations potentially support a covered claim, while the facts actually established in the underlying suit determine whether the insurer must indemnify its insured." <u>Zurich Am. Ins. Co. v. Nokia, Inc.</u>, 268 S.W.3d 487, 490-91 (Tex. 2008) (citing <u>GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church</u>, 197 S.W.3d 305, 310 (Tex. 2006)). Accordingly, "[t]wo documents determine an insurer's duty to defend-the insurance policy and the

---

[72]   <u>See</u> Doc. 30-1, Def.'s Mot. for J. on the Pleadings pp. 13-15; Doc. 31, Pl.'s Mot. for Partial Summ. J. p. 9 n. 3.

third-party plaintiff's pleadings in the underlying litigation, which the court must review 'without regard to the truth or falsity of those allegations.' " Amerisure Ins. Co. v. Navigators Ins. Co., 611 F.3d 299, 309 (5th Cir. 2010) (quoting GuideOne, 611 F.3d at 309). This is known as the eight-corners rule. Id.

Great American argues that the eight-corners rule applies to this suit such that the Hall complaint cannot be considered by the court. However, the eight-corners rule applies to the insurer's duty to defend not its duty to advance defense expenses. Burks v. XL Specialty Ins. Co., 534 S.W.3d 458, 462 (Tex. App.—Houston [14th Dist.] 2015, no pet.). "Regardless, the rationale for the rule does not apply when an insured seeks to establish coverage under an interrelated-claims provision." Id.

The court will consider the proper summary judgment evidence, which primarily consists of the Policy and the Hall, Schott, and Cappelli complaints.

## B.   **Nobilis' Breach of Contract Claim**

A plaintiff must prove the following elements for a successful breach of contract claim under Texas law: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." Mullins v. TestAmerica Inc., 564 F.3d 386, 418 (5th Cir. 2009)(citing Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex.

18

App.–Houston [14th Dist.] 2005, pet. denied)). Great American does not dispute the existence of the first, second, and fourth elements. Thus, whether Great American breached the Policy is the only element in dispute in Nobilis' breach of contract claim.

The critical question is whether pursuant to Section VI of the policy, Nobilis' claims for coverage for the <u>Schott</u> and <u>Cappelli</u> Lawsuits are considered the same claim as the claim for coverage for the <u>Hall</u> Lawsuit. If they are considered the same claim under the Policy, then the claims are considered to have been filed at the same time as the <u>Hall</u> claim for coverage and Great American breached by refusing to provide coverage for the claims. If, under the Policy, the claims for coverage for the <u>Schott</u> and <u>Cappelli</u> Lawsuits are not considered the same claim as the <u>Hall</u> claim for coverage, then Great American properly refused to provide coverage.

The Policy provides that the claims will be considered a single claim if they involve the same "Wrongful Act" or "Related Wrongful Acts".[73] A "Wrongful Act" is broadly defined to include "any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty" by the "Insured Persons" or the "Insured Entity".[74] Given that allegations alone are sufficient to trigger the Policy's definition of a "Wrongful Act", the court finds that the allegations of the <u>Hall</u>, <u>Schott</u>, and

---

[73]   See <u>id.</u> p. 41.

[74]   See <u>id.</u> p. 14.

*Cappelli* Lawsuits meet this definition. At a minimum, each contains allegations of misstatements, errors, and misleading statements made by the "Insured Entity" and the "Insured Persons."

The *Hall* plaintiffs alleged that Nobilis misstated its income and expenses and filed false financial statements.[75] The *Hall* plaintiffs also alleged that certain statements contained in Nobilis' SEC filings "were materially false and misleading." The *Schott* plaintiffs alleged that Nobilis "overstated its net income for the year ended December 31, 2014."[76] The *Cappelli* plaintiffs alleged that Nobilis made "misrepresentations about the financial state of Nobilis . . . with respect to disclosure and financial reporting, made by the [*Cappelli*] defendants in core documents and in other written and oral statements."[77] All three lawsuits contain allegations that Nobilis' financial statements were misstated, false, misleading, and/or inaccurate. Additionally, all three complaints discuss the information revealed by the *Seeking Alpha* post. The court finds that the *Hall*, *Schott*, and *Cappelli* complaints contained at least some allegations of the same "Wrongful Acts".

Even if the "Wrongful Acts" in the lawsuits are not identical,

---

[75]    *See* Doc. 31-5, Ex. E to Pl.'s Mot. for Partial Summ. J., *Hall* Complaint, pp. 18-19.

[76]    *See* Doc. 31-11, Ex. K to Pl.'s Mot. for Partial Summ. J., *Schott* Complaint p. 6.

[77]    *See* Doc. 31-13, Ex. M to Pl.'s Mot. for Partial Summ. J., *Cappelli* Complaint p. 9.

they are at least "Related Wrongful Acts" under the Policy. "Related Wrongful Acts" is broadly defined by the Policy to be "Wrongful Acts" that "are logically or causally connected by reason of any common fact, circumstance, [or] situation . . . ."[78] At their core, all three complaints are allegations that Nobilis inflated its stock price by making various misstatements to the investing public. Thus, at the very least, the "Wrongful Acts" alleged in the complaints are united by common circumstance or situation such that the allegations are "Related Wrongful Acts" under the Policy.

Great American attempts to show that the allegations are different and unrelated by focusing on minute differences in the complaints. For example, Great American focuses on the fact that the <u>Hall</u> complaint mentions an overstatement of revenue where the <u>Schott</u> complaint discusses an overstatement of net income.[79] However, as a matter of logic, the two are closely related because an overstatement of revenue would also result in an overstatement of net income, and both would cause a company's perceived value to be inflated. The fact that the two complaints used different ways to describe the same "Wrongful Act" of overstating key financial information does not mean that the "Wrongful Act" suddenly becomes two distinct "Wrongful Acts." Even if viewed as distinct, the two

---

[78]   <u>See</u> <u>id.</u> p. 37.

[79]   <u>See</u> Doc. 34, Def.'s Resp. to Pl.'s Mot. for Summ. J. pp. 13-14.

acts would still meet the Policy's broad definition of "Related Wrongful Acts."

Great American also argues that the <u>Hall</u> Lawsuit, unlike the <u>Schott</u> and <u>Cappelli</u> Lawsuits, was not based on the accounting errors that were disclosed in the amended SEC disclosures.[80] Great American states that the <u>Schott</u> and <u>Cappelli</u> Lawsuits "seek redress of the various unrelated accounting errors disclosed in the January 2016 financial statement."[81] However, the <u>Schott</u> and <u>Cappelli</u> Lawsuits sought damages for the same allegedly defective financial statements as the <u>Hall</u> Lawsuit. The disclosure of the errors in the January 2016 correcting statement was primarily relevant to the lawsuits in that it caused Nobilis' stock price to drop and marked the end of the class period for the <u>Schott</u> and <u>Cappelli</u> Lawsuits. The January 2016 disclosure was not itself a "Wrongful Act." The "Wrongful Acts" complained of in the three lawsuits are primarily that Nobilis' financial statements from 2014 and the first two quarters of 2015 contained misstated information.

Great American goes on to describe other minor differences between the three complaints, but ignores the plain language of the Policy. In order to be "Related Wrongful Acts" the Policy only requires that the Wrongful Acts be connected "by reason of <u>any</u>

---

[80]    <u>See</u> <u>id.</u>

[81]    <u>See</u> <u>id.</u> p. 13.

common fact, circumstance, [or] situation."[82]  The fact that the complaints contain some of the same "Wrongful Acts" is enough to trigger coverage.  That the complaints also contain "Related Wrongful Acts" only strengthens Nobilis' position that coverage was withheld in breach of the Policy.

For these reasons, under a reading of the plain language of the Policy, the claims for coverage in the <u>Hall</u>, <u>Schott</u>, and <u>Cappelli</u> Lawsuits are a single claim that is deemed to have been made within the Policy's period.  For that reason, Great American breached the Policy when it refused to provide coverage for the <u>Schott</u> and <u>Cappelli</u> Lawsuits.

### IV.  Conclusion

Based on the foregoing, the court **GRANTS** Nobilis' motion and **DENIES** Great American's motion.


**SIGNED** in Houston, Texas, this <u>4</u><sup>th</sup> day of October, 2018.


_____
U.S. MAGISTRATE JUDGE

---

[82]    <u>See</u> Doc. 31-1, Ex. A to Pl.'s Mot. for Partial Summ. J., D&O Insurance Policy p. 37.